POSTED ON WEBSITE

FILED

JAN 22 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Maryam V. Noori and<br>Reza Moshref-Noori,<br><br>      Debtors.<br>_____<br><br>James E. Salven, Chapter 7<br>Trustee,<br><br>      Plaintiff,<br><br>v.<br><br>Kathryn Miller,<br><br>      Defendant. | Case No. 07-11030-B-7<br><br><br><br><br><br><br><br>Adversary Proceeding No. 07-1193 |

**MEMORANDUM DECISION REGARDING COMPLAINT TO AVOID
FRAUDULENT TRANSFER AND MOTION FOR DISCOVERY SANCTIONS**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Trudi G. Manfredo, Esq., appeared on behalf of James E. Salven, chapter 7 trustee.

Defendant Kathryn Miller appeared *in propria persona*.

<pre>                   Before the court is a complaint by James E. Salven, the chapter 7 trustee (the
</pre>
"Trustee") to avoid the prepetition transfer of a $50,000 "rebate" payment made in connection with a sale of the Debtors' house to defendant Kathryn Miller ("Defendant" or "Ms. Miller") pursuant to 11 U.S.C. § 548. Alternatively, the Trustee seeks to avoid the transfer of the house itself and recover the value of the house in excess of the net consideration given by Ms. Miller. Also under submission is a motion by the Trustee to award discovery sanctions against Ms. Miller in the amount of $432. For the reasons set forth below, judgment will be entered in favor of the Trustee.

This memorandum decision contains the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 548 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(H).

**Background and Findings of Fact.**

**Sale of the Debtors' House.** This bankruptcy commenced as a voluntary proceeding under chapter 7 on April 10, 2007. Prior to the bankruptcy, the debtors, Maryam V. Noori and Reza Moshref-Noori (the "Debtors") owned a residential property located on Granville Avenue in Fresno, California (the "Property"). On February 22, 2007, the Debtors transferred the Property to Ms. Miller, through escrow, for an agreed price of $710,000. Ms. Miller obtained a new mortgage and the purchase price was paid in cash. The Debtors' mortgage and closing costs were paid, and surplus cash in the amount of $80,029.87 was wire-transferred into the Debtors' bank account. Immediately upon receipt of this money, the Debtors wire-transferred the sum of $50,000 back to Ms. Miller (the "Rebate") making the net purchase price $660,000. Ms. Miller acknowledged at trial that the fair market value of the Property was $710,000. That is the value upon which Ms. Miller applied for and obtained new financing to purchase the Property. Ms. Miller explains the Rebate as a form of "incentive" to purchase the Property in the first

2

place.

The Debtors were in financial distress and insolvent at the time they sold the Property. The Debtors initially listed the Property for $660,000. The lender had begun foreclosure, although the status of that foreclosure, and the date of a noticed sale are not in the record. It is unclear how long the Property had been on the market, but the Debtors were not trying to list the Property for its fair market value. They were trying to avoid a foreclosure and only wanted to recover enough to pay off the mortgage, the selling costs, and cover their moving expenses. The Debtors knew that they were going to file bankruptcy after the Property was sold. Sometime in that process, the Debtors were approached by an individual who asked if they would agree to sell the Property for $50,000 more than their asking price and give the Rebate payment back to the buyer. The Debtors agreed.

Ms. Miller lived in Southern California. She testified that she was paying people to look for houses to purchase as an investment. Ms. Miller's son, Frederick Bryant ("Fred"), and another individual identified as Zane Kassamalli ("Zane") told her about the Property and presented the idea of buying the Property and receiving the Rebate. Fred and Zane arranged for an appraisal of the Property, made all arrangements for the new financing, interacted with the Debtors and orchestrated the transaction. The Debtors never met Ms. Miller or had any communication with her prior to the day of trial. Sometime after Ms. Miller received the $50,000 Rebate, she gave $40,000 to Fred and Zane.

Ms. Miller never took physical possession of the Property. The Debtors remained on the Property and paid rent for one or two months at the rate of $1,800 per month. After the Debtors moved out, Fred and Zane rented the Property to another tenant who made some repairs, however, the Property eventually went into default and was lost to foreclosure by the new lender. Fred testified that he and Zane made four or five mortgage payments after Ms. Miller acquired the Property, but his testimony was not credible and there was no documentary evidence to corroborate that testimony.

Fred testified that he and Zane were "business partners" along with a third individual identified as Matthew Bader ("Bader"). Fred and Zane presented the "offer" to Ms. Miller whereby she would purchase the Property for $710,000, receive the Rebate for $50,000, and then pay Fred and Zane a $40,000 "finders fee." In other words, Ms. Miller was offered $10,000 to allow her name and bank account to be used in the scheme. Fred testified that the $40,000 was supposed to be used to pay their expenses and fix up the Property. However, he produced no documents to show that any of the money was actually spent on the Property. Fred's partner, Bader, arranged for an appraisal of the Property at $710,000. Fred said that he did see a written appraisal and that he had no reason to believe that the Property was not actually worth $710,000 at the time. Ms. Miller testified that she too believed the Property was worth $710,000, that she was looking for a "bargain" and that she would not have agreed to purchase the Property without the Rebate.

**The Discovery Dispute.** The Trustee commenced this adversary proceeding on December 20, 2007. Ms. Miller filed a response to the complaint *in propria persona* and continued to represent herself throughout the litigation, including the trial.[1]

On February 19, 2008, the Trustee's attorney, Trudi Manfredo served on Ms. Miller requests for written discovery in the form of interrogatories and a request for production of documents (the "Discovery Request"). Ms. Miller did not respond to the Discovery Request and on March 27, 2008, Ms. Manfredo sent a letter to Ms. Miller asking that she do so. Ms. Miller responded six days later leaving only a brief telephone message. On April 4, 2008, Ms. Manfredo received by facsimile some of the requested documents. Ms. Miller never did serve a formal written response. Ms. Manfredo made another attempt to telephone Ms. Miller and request a complete and formal response to the Discovery Request.

On May 15, 2008, the Trustee brought a motion to compel Ms. Miller to respond

---

[1] At trial, the court denied Ms. Miller's request for a continuance to find an attorney.

to the Discovery Request (the "Discovery Motion"). On May 21, 2008, the court issued an order granting the Discovery Motion and compelling Ms. Miller's response to the discovery. The court reserved for a future ruling the Trustee's request for sanctions in the amount of $432 to cover the cost of bringing the Discovery Motion.

**Applicable Law.**

Under § 548(a)(1)(A), the trustee can avoid a prepetition transfer of a debtor's property if the transfer was made with actual intent to hinder, delay, or defraud the creditors. Whether or not the debtor acted with such intent is a question of fact. *In re Sholdan*, 217 F.3d 1006, 1010 (8th Cir.2000). The trustee has the burden of proof on that issue.

Under § 548(a)(1)(B), the trustee also may set aside the transfer of property as constructively fraudulent if the debtor (1) received less than reasonably equivalent value in exchange for the transferred property, and (2) was insolvent on the date of the transfer or became insolvent as a result of the transfer. The relevant time for determining what was "reasonably equivalent value" is the time of transfer. See *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Again, under § 548, the trustee bears the burden to prove each element of his claim for relief; the trustee must show that the debtor did not receive "reasonably equivalent value." *5 Collier on Bankruptcy*, (15th Ed. Revised, 2007), ¶ 548.10, at 548-80.5; *Jumer's Castle Lodge, Inc. v. Jumer*, 338 B.R. 344, 354 (C.D. Ill. 2006).

Under § 550(a), the trustee may recover, for the benefit of the bankruptcy estate, the property that was transferred. If recovery of the property itself is impracticable, then the trustee may seek to recover the value of the property from the person to whom the property was initially transferred.

The term "reasonably equivalent value" is not defined in the Bankruptcy Code. That function has been left to the courts. *McCanna v. Burke*, 197 B.R. 333, 338-39 (D.N.M. 1996). It is clear that "reasonably equivalent value" is not just another term for "fair market value." As the U.S. Supreme Court stated in *BFP v. Resolution Trust Corp.*,

<mark>Case 07-01193    Filed 01/22/09    Doc 54</mark>

511 U.S. at 531, "fair market value is not necessarily the benchmark against which determination of reasonably equivalent value is to be measured. It may be presumed that Congress acted intentionally when it used the term 'fair market value' elsewhere in the Bankruptcy Code but not in § 548, particularly when the omission entails replacing standard legal terminology with a neologism."

There is no hard and fast rule in the Ninth Circuit as to what constitutes "reasonably equivalent value." The concept of "reasonable equivalence" is not wholly synonymous with "market value" even though market value is an extremely important factor to be considered in the court's analysis. *In re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir.1990).

Whether the transfer is for "reasonably equivalent value" in every case is largely a question of fact, to which considerable latitude must be given to the trier of fact. *In re Ozark Restaurant Equip. Co.*, 850 F.2d 342, 344 (8th Cir. 1988). In order to determine whether a fair economic exchange has occurred, the court must analyze all the circumstances surrounding the transfer in question. *5 Collier on Bankruptcy*, (15th Ed. Revised, 2007), ¶ 548.05[1][b] at 548-36. The transferee's "good faith" is a relevant factor. *In re Smith*, 24 B.R. 19, 23 (Bankr. W.D.N.C. 1982).

The immediacy of a nonjudicial foreclosure proceeding is one of the "price-affecting characteristics" of the Property which cannot be ignored in the "reasonably equivalent value" calculation. See *BPF v. Resolution Trust Corporation*, 511 U.S. at 539. However, the price paid at a "fire sale" of real property is not necessarily "reasonably equivalent value" for purposes of § 548. *Salven v. Munday (In re Kemmer)*, 265 B.R. 224, 234 (Bankr. E.D. Cal. 2001).

**Analysis and Conclusions of Law.**

The facts of this case are similar to the situation addressed in this court's earlier decision in *In re Kemmer*, 265 B.R. 224. In *Kemmer*, the debtors desperately needed to sell their vacation home to avoid the imminent attachment of creditor liens. The debtors had a substantial amount of equity in the property and no way to protect it from the

<mark>6</mark>

creditors of their failing business. The debtors were not interested in realizing the maximum value for their property. They only wanted to recover enough cash out of the property to fund an exemption in their primary residence before their creditors could attach judgment liens against the vacation home. The debtors listed the property, a mountain cabin high above the snow line in the Sierra Nevada Mountains, for sale in the middle of the winter. At the time, the property was virtually inaccessible except by snowshoe or snowmobile. The debtors made no effort to market the property during the customary selling season for similar properties. Instead, they entered into a "fire sale" agreement to sell the property to their real estate agent one week after it was listed for sale. The real estate agent knew that the property could be cleaned up and resold during the summer months for a substantial profit. The selling price was calculated based on the bare minimum amount needed to pay the recorded liens and to fund the Kemmer's homestead exemption. Under those circumstances, this court ruled that the price paid by the real estate agent was not "reasonably equivalent" for purposes of § 548.

**Actual Fraud.**

Upon review and consideration of the evidence, the court is persuaded that the Debtors did not sell the Property with any intent to hinder, delay or defraud their creditors. The Debtors realized that they could not afford to keep the Property and they wanted to avoid a foreclosure. They were not focused on the Property's value so long as it sold for enough to satisfy the existing mortgage. That being said, the Debtors were not focused on trying to pay any of their unsecured creditors with proceeds from the Property either.

**Constructive Fraud.**

There is no dispute here that the Property had a fair market value of $710,000 at the time it was sold to Ms. Miller. Ms. Miller offered no evidence to suggest that its fair market value was any less. Both she and her son Fred confirmed that the Property had been appraised and that it was worth the amount upon which Ms. Miller applied for and acquired the new financing. There is also no dispute that the Debtors only received

$660,000 for the Property after returning the $50,000 Rebate to Ms. Miller. The question before the court is whether $660,000 was "reasonably equivalent" to the true value of the Property. Given the overall nature of this transaction and the implications it has on Ms. Miller's good faith, the court is persuaded that it was not.

It matters little whether the court avoids the sale of the Property based on the net value given by Ms. Miller, or whether the court avoids directly the subsequent Rebate as an independent transfer made without consideration. The result is the same. Ms. Miller, with the aid of Fred, Zane, and Bader, participated in a scheme to purchase a distressed property for a "bargain" price, encumber the property for its full value, retain the "profit" and quickly abandon the property back to the new lender. The court is not persuaded that Ms. Miller ever intended to take possession of the Property or retain it for investment purposes. There was no evidence to suggest that Ms. Miller was ever in a position, financially, to keep the Property as an investment. The court is not persuaded that Ms. Miller, or any of her colleagues ever made any mortgage payments to the new lender. Soon after the Debtors moved out and stopped paying rent, the Property was allowed to go back into foreclosure. The overall transaction itself does not bear the indicia of "reasonableness" and the court can find little basis, in law or equity, to bless this scheme with a ruling in favor of the Defendant.

**Discovery Sanctions.**

Discovery in an adversary proceeding is governed by the Federal Rules of Civil Procedure and made applicable through the Federal Rules of Bankruptcy Procedure. FRCP 37(a) (made applicable by FRBP 7037), provides for a monetary award of legal fees and costs to a party who must file a motion to compel disclosure or discovery, and is successful. Fed.R.Civ.P. 37(a)(4)(A) provides in pertinent part:

/ / /

/ / /

/ / /

/ / /

If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

The Discovery Motion was successful. Ms. Miller waived her right to object to the Discovery Request by not serving a written response, producing the documents, or seeking a protective order, within the time prescribed in the Rules. The fact that Ms. Miller began producing some documents after the Discovery Motion was filed does not vitiate the sanction issue. Ms. Miller never responded in writing as required by Fed.R.Civ.P. 34(b). Rule 37(a)(4)(A) states that fees and costs *shall* be awarded, even if the discovery is produced after the Motion was filed. The pertinent question is whether the Discovery Motion was necessary and whether the Trustee made a good faith effort to get the discovery without court intervention. The court is persuaded that Ms. Miller's conduct necessitated the Discovery Motion. The court is also persuaded that the Trustee's attorney made a good faith effort to obtain the discovery without court action. Ms. Miller's informal and untimely response to the Discovery Request was not substantially justified. Ergo, the request for sanctions will be granted.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Debtors transferred an asset worth $50,000 to Ms. Miller for no consideration. The Property is no longer available for sale by the Trustee, so recovery of the Property itself is not practicable. A monetary judgment is the proper alternative relief. Further, the Trustee is entitled to discovery sanctions in the amount of $432. A judgment will be entered in favor of the Trustee in the amount of $50,432 plus costs.

Dated: January 22, 2009

W. Richard Lee
United States Bankruptcy Judge

9